UNITED STATES BANKRUPTCY COURT81
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

LAUREL ANN BARTON,

       Debtor

_____/

Case No. 18-04342
Hon. Scott W. Dales
Chapter 13

MEMORANDUM OF DECISION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
Chief United States Bankruptcy Judge

I.  INTRODUCTION

The court conducted a contested confirmation hearing in the chapter 13 case of Laurel Barton (the "Debtor") on May 28, 2019 in Grand Rapids, Michigan.  The Debtor and her creditor, Real Time Resolutions, Inc. ("Real Time"), appeared through counsel.

The main goal of the hearing was to determine the value of the Debtor's residence, real estate commonly known as 10168 Willow Ave., Grant, Michigan (the "Property").  The Debtor, through her chapter 13 plan, proposes to "strip off" Real Time's second mortgage against the Property as wholly unsecured because, she says, the amount of the first mortgage exceeds the Property's value.

This valuation dispute represents the classic "battle of the appraisers."  Although the court is free to arrive at its own conclusion of value, perhaps selecting a figure other than one that either appraiser offered, the court sees no need to interpolate between the two opinions.  Having carefully considered the testimony from both appraisers and the ten exhibits admitted into evidence, the court finds the opinion of the Debtor's expert to be more persuasive.

## II.  JURISDICTION AND BURDEN OF PROOF

The court has jurisdiction over the Debtor's bankruptcy case by way of reference from the United States District Court for the Western District of Michigan.  *See* 28 U.S.C. §§ 157(a) and 1334(a); W.D. Mich LCivR 83.2(a).  A contested confirmation hearing is a "contested matter" which Congress treats as a "core proceeding."  28 U.S.C. § 157(b)(2)(L).  The court has ample authority to determine value in connection with the confirmation of a chapter 13 plan, and the parties have not argued otherwise.

At the beginning of the hearing, the parties agreed that the Debtor, as the Plan's proponent, must shoulder the burden of proof on the valuation question.  As the Supreme Court instructs, the standard of proof in most civil proceedings, including this one under 11 U.S.C. 506(a), is the preponderance of the evidence standard.  *Grogan v. Garner*, 498 U.S. 279 (1991).  This means that the Debtor will prevail if she persuades the court that it is more likely than not that the Property is worth less than the amount of the first mortgage.

## III.  ANALYSIS

The parties agreed that a hearing was necessary to determine the value of the Debtor's Property pursuant to 11 U.S.C. § 506 in order to establish the appropriate treatment of Real Time's second mortgage under the Debtor's chapter 13 plan (ECF Nos. 5 and 20, the "Plan.").[1]  *See Lane v. Western Interstate Bancorp. (In re Lane),* 280 F.3d 663, 664 (6th Cir. 2002) ("Where a creditor holds a second mortgage on a homestead valued at less than the debtor's secured obligation to a first mortgagee, for example, the holder of the second mortgage has only an 'unsecured claim' for § 506(a) purposes.").  The Debtor contends that the Property is worth $114,500.00 and is subject to a senior mortgage lien in favor of Ditech Financial LTD ("Ditech") in the amount of

---

[1] Real Time's second mortgage secures a claim in the amount of $22,004.04.

$125,768.00.  Because Ditech's lien exceeds the value the Debtor has assigned to the Property, her Plan proposes to treat Real Time as an unsecured creditor.  Real Time, however, contends that the Debtor's property is worth $170,000.00 and therefore asks the court to treat its claim as secured. Because the Debtor proposes contrary treatment in the Plan, Real Time objected to confirmation.

The court admitted two appraisals, one from the Debtor and one from Real Time, and heard testimony from the Debtor's appraiser (Jeffrey J. Erhart), and Real Time's appraiser (Kenneth Frifeldt).  The court found each of the witnesses credible, and qualified both appraisers as experts under Federal Rule of Evidence 702, without controversy.  The appraisers are both qualified by their training and experience, which the testimony and documentary evidence established.

The Debtor's expert, Mr. Erhart, testified about his 13-year tenure as well as his qualifications, experience, and licensure.  Mr. Erhardt has served as a certified appraiser since approximately 2006, appraising residences in Arizona before moving to Grand Rapids, Michigan. He is Michigan Certified and FHA approved, with GRAR/MLS privileges for Kent, Ottawa, Newaygo, Ionia, and Montcalm counties.  *See* Exh. 1 at p.1 (Erhart Resume).  The Property is located within Newaygo County.

After the court qualified him as an expert, Mr. Erhart shared his impressions of the Property and stated that he used a market value approach when appraising it.  According to Mr. Erhart, the Property is a modular home of 1352 square feet built in 2002 and situated on 13.33 acres of both fielded and wooded land in Newaygo, Michigan.  In his opinion, its market value is $114,500.00. In his appraisal, he describes the Property as "average condition . . . [with] evidence of [water] infiltration near the outside of the walls at the ceiling level in the living room and one of the bedrooms."  *See* Exh. 2 at p.2 (Erhart Appraisal).  Photographic evidence supports this observation.

Second, Mr. Erhart testified about his methodology when employing the market value approach. More specifically, he used sales data from comparable properties (i) within 5 miles of the Property; (ii) situated on more than 5-acres; and (iii) sold between December 15, 2017 and December 15, 2018. Because real property is unique by nature, and no two pieces are perfectly comparable, Mr. Erhart employed a method for adjusting the price of the comparable properties to better predict the market value of the Property. His comparables consisted of a mobile home, a modular home, and an "REO" or bank-owned "stick-built" home. Each adjustment requires judgment and expertise in gauging the impact of various attributes of a comparable on the market's perception, and as both witnesses agreed, the value of the Property. In his testimony, Mr. Erhart defended his comparables and stood by his opinion of the value of the Property.

Mr. Frifeldt, Real Time's expert, also testified about his qualifications as an appraiser. He has a Certified Residential Appraiser's license and has been appraising properties for 12 years. Mr. Frifeldt testified that he used the same market value method as Mr. Erhart when appraising the Property, but in his opinion, the Property is worth $170,000.00. Mr. Frifeldt also used "comparable" properties with various adjustments to account for the differences in the attributes of the house, but he selected different comparables using different criteria.

On direct examination, Mr. Frifeldt explained that he chose comparables not based on the type of building (manufactured, modular, mobile, or stick-built), but on the building code that governed the construction of each structure. Mr. Frifeldt testified that, in Michigan, there are two building codes, which he referred to in short-hand as "HUD" and "BOCA." From Mr. Frifeldt's testimony, the court understands that the HUD code is a national building standard for certain pre-fabricated residential structures assembled off-site at a factory or similar facility, as opposed to more traditional residential structures built on-site and governed by the local BOCA. Mr. Frifeldt

testified that housing built to the HUD requirements is of lesser quality than housing built to the BOCA standards.  He further explained that the Debtor's Property was built to BOCA specifications, even though he described it as a "modular" home built off-site.  Therefore, in selecting comparables, he used properties with structures built to the BOCA building standards to arrive at his market valuation, relying heavily on "stick built" structures.  Mr. Frifeldt evidently believes that the buying public would appreciate the differences in the quality of structures conforming to BOCA standards, as opposed to HUD standards.  However, in order to make the comparisons with the comparable properties, Mr. Frifeldt subjected the comparables to heavy and numerous adjustments that, as an appraiser, he felt were necessary to project the market value of the Debtor's Property.  When pressed about these adjustments, Mr. Frifeldt conceded that in general, the greater the adjustments, the less comparable properties would be.  The court inferred from his testimony that an appraisal with numerous and larger adjustments was less reliable than an appraisal requiring fewer and smaller adjustments.

While HUD and BOCA standards may be relevant to the appraiser, using the BOCA standard as the basis for exclusively relying on "stick-built" comparables artificially increased the projected value of the Property by underplaying its status as a modular or manufactured home, albeit one built to BOCA standards.  The applicable building code may affect the quality of the construction, as Mr. Frifeldt testified, but it does not affect the distinctive appearance and relative "curb appeal" or not, of structures assembled off-site -- whether called mobile homes, manufactured homes, or modular homes.  For example, two out of Mr. Frifeldt's three comparables included properties with attached garages and roofs having a substantially greater pitch than the Property -- features generally not available with structures assembled off-site and generally more desirable in West Michigan's climate.

Mr. Erhart's comparables, on the other hand, give a more accurate projection of the subject Property's price because the homes are in similar condition and require minimal adjustments to offset differences between the properties, as opposed to Mr. Frifeldt's comparables which are in markedly better condition and offer more amenities than the subject Property.

Additionally, on direct examination, counsel asked Mr. Frifeldt if Real Time had provided him with a target value that his appraisal needed to meet. In response, he said that his client did not assign a target but he candidly admitted that he "knew what side of the fence he was on," or words to that effect. The court infers from this statement that Mr. Frifeldt understood that it would be beneficial for Real Time to receive a higher valuation on the Property, and thus factors in his admitted bias when weighing his report against Mr. Earhart's.

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, the court finds that the Property is worth $114,500.00 for purposes of plan confirmation and distribution. The Plan properly modifies Real Time's claim by treating it as wholly unsecured, taking into account Ditech's senior lien.

As noted during the hearing, the court understands that the chapter 13 trustee was prepared to recommend confirmation of the Plan except for the controversy regarding value that the court just resolved. Accordingly, the court invites the trustee to submit a confirmation order on his usual form, confirming the Plan as amended.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.       The Property has a value of $114,500.00 for purposes of confirming the Plan; and

2.       If the chapter 13 trustee continues to recommend confirmation of the Plan, he shall, within seven days after entry of this Memorandum of Decision and Order, submit a proposed confirmation order in the usual form.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Laurel Ann Barton, Ralph M. Reisinger, Esq., attorney for Debtor, Tom Siver, Esq., attorney for Real Time Resolutions, Inc., Brett N. Rodgers, Esq., Chapter 13 trustee, and all parties who have filed appearances or requests for notice of the proceedings.

[END OF ORDER]

**IT IS SO ORDERED.**

**Dated May 31, 2019**



_____
Scott W. Dales
United States Bankruptcy Judge